IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ASHLEY T. JONES, #216506,               )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )  CIVIL ACTION NO. 2:05-CV-731-WKW
                                        )              [WO]
                                        )
GLADYS DEESE, et al.,                   )
                                        )
          Defendants.                   )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Ashley T. Jones ["Jones"], a state inmate, alleges

violations of her constitutional rights by Gladys Deese, former warden of Tutwiler Prison

for Women ["Tutwiler"], and Frank Albright, a former deputy warden who now serves as

warden of the aforementioned correctional facility.  Specifically, Jones complains that the

defendants deprived her of equal protection in the assignment of jobs and their denial of

her request to attend trade school.  Jones also asserts that the defendants retaliated against

her for exercising her right of access to the courts.  Jones seeks a declaratory judgment,

injunctive relief and monetary damages from the defendants.

The defendants filed a special report and supporting evidentiary materials addressing

Jones' claims for relief.  Pursuant to the orders entered herein, the court deems it

appropriate to treat this report as a motion for summary judgment.  *Order of October 3,*

*2005 - Court Doc. No. 9.*  Thus, this case is now pending on the defendants' motion for

summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (quoting Fed.R.Civ.P. 56(c)). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation to rule omitted). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with

evidence beyond the pleadings, that a genuine issue material to her case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-movant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"); Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, --- U.S. ---, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006).  Consequently, to survive the defendants' properly supported motion for summary judgment, Jones is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."

*Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not provide sufficient evidence to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "[her] own conclusory allegations" challenging a defendant's actions); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.");

*Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of

material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, --- U.S. at ---, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Jones fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

### A. Equal Protection Claims

To set forth a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) '[she] is similarly situated with other prisoners who received' more favorable treatment; and (2) [her] discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination. *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114

(11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 265-266 (1977). "Mere error or mistake in judgment ... does not violate the equal protection clause. There must be intentional discrimination [by the defendants].... Even arbitrary administration of [prison regulations], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) (simple disparity of treatment between individuals of different races is insufficient to establish discrimination). "The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state [rules and regulations] into equal protection claims. 'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception. But the Constitution does not demand perfection.'" *E & T Realty*, 830 F.2d at 1114 (citations omitted). Consequently,

> [p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555. Indeed, it is well established that proving intent to discriminate is the essential element of an equal protection claim. *See, e.g.,*; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (omission in original) (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v.*

> *Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-1349 (11th Cir. 2005).

"'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences.... It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). In a case such as this one, where the plaintiff challenges actions of prison officials, exceptionally clear proof of discriminatory intent is required. *See Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendants. *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Jones bears the burden of producing sufficient evidence that the defendants' actions resulted from intentional discrimination. *Arlington Heights*, 429 U.S. at 265; *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Purposeful discrimination can be shown either by direct evidence, i.e., admissions of the defendant, or indirectly by way of circumstantial evidence. *Arlington Heights*, 429 U.S. at 265-266.

A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants. *Id*. at 249.

    **1. Job Discrimination.** Jones makes the conclusory assertion that the defendants "treated [her] unfairly - discrimination - job assignment." *Plaintiff's Complaint - Court Doc. No. 1* at 2. This claim relates to the defendants' June 14, 2005 decision to remove Jones from her job as a tutor at the trade school. Jones maintains the defendants removed her from this job due to the length of time she had served as a tutor while allowing other inmates to remain in their jobs despite the term of their employment. The defendants deny this allegation and maintain that any adverse action taken against Jones with respect to her job assignment resulted solely because of potential security concerns arising from the plaintiff's behavior. *Respondents' Exhibit 1 (Affidavit of Gladys S. Deese) - Court Doc. No. 8-2* at 1 ("The fact of the matter is that Inmate Jones was removed from her assigned job as GED tutor due to security concerns, not her length of time on the job."); *Respondents' Exhibit 2 (Affidavit of Frank Albright) - Court Doc. No. 8-3* at 1 (Security reasons necessitated the change in Jones' job assignment as "I had information that led me to believe that inmate Jones was not performing her job as to protocol. Inmate Jones was

re-assigned to a job that provided more structured supervision."). Upon review of the record, the court concludes that this claim entitles Jones to no relief.

Initially, Jones does not present any evidence which establishes that she is, in fact, similarly situated with the inmates whom she claims received more favorable treatment from the defendants; rather, she merely compares herself to other inmates allowed to remain in their jobs longer than she did. Furthermore, Jones does not allege that the defendants subjected her to adverse treatment based on some constitutionally impermissible reason. To the extent Jones relies on the fact that some inmates are allowed longer tenure in their jobs, the law is well settled that the mere differential treatment of inmates fails to constitute a violation of the Equal Protection Clause. *E & T Realty*, *supra*. Thus, Jones' equal protection claim related to her job assignment entitles her to no relief as she has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants, *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005), or that the defendants subjected her to adverse treatment based on some constitutionally impermissible reason. In light of the foregoing, summary judgment is due to be granted in favor of the defendants on this claim.

**2. Trade School.** Jones complains that the defendants denied her request to attend trade school due to her sentence of life without parole while similarly situated male inmates are allowed placement in trade school despite serving the same sentence. The defendants

refute this claim.  Specifically, they argue that their decision regarding Jones' placement in trade school as a student resulted from security concerns related to the necessity of transferring Jones outside the secured perimeter of Tutwiler to attend J. F. Ingram Technical College and the failure of Jones to submit the proper request form establishing her ability to pay the requisite tuition.  *Respondents' Exhibit 1 (Affidavit of Gladys S. Deese) - Court Doc. No. 8-2* at 1 (Although initially advised of her ineligibility to attend trade school, correctional officials "advised [Jones] that she may attend J. F. Ingram Technical College if security needs are met and she could afford to pay the $90.00 per credit hour.  Inmate Jones continues to state she wants to attend, however, she has failed to submit a written request stating she is financially able to pay the tuition and has not completed a disbursement form....").  The evidentiary materials filed by the plaintiff likewise support the defendants' argument as these materials indicate that "LWOP inmates [in medium custody] may be assigned to any work assignment or program conducted inside the perimeter security of a [high security] level institution..... [but] any movement of LWOP inmates outside the perimeter security of the institution ... [must] be in the custody of armed officers and [the inmate] will be suitably restrained...."  *Plaintiff's Exhibit H to the Complaint - Court Doc. No. 1-9*.  Jones also concedes she failed to submit the proper forms but argues this failure occurred because she "was never advised ... [of] the requirements."  *Plaintiff's November 15, 2005 - Court Doc. No. 12* at 3.  Although Jones

11

submits an affidavit from her father indicating his willingness to provide payment of her tuition fees, *Plaintiff's Exhibit 2 to the November 15, 2005 Response - Court Doc. No. 12-2*, he only executed this affidavit in November of 2005 and the defendants therefore had no knowledge of this information at the time of the challenged decision.

As previously noted, Jones bears the burden of producing sufficient evidence to show that the actions of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. A review of the pleadings filed by Jones demonstrates she has failed to meet her pleading burden. Other than alleging that male inmates serving life without parole sentences are allowed access to trade school, Jones presents no evidence which indicates she is actually similarly situated with these inmates. For instance, the trade school Jones seeks to attend is not located within the secured perimeter of Tutwiler, whereas the trade school male inmates attend may be within the requisite perimeter of their assigned facility. Additionally, the male inmates approved for trade school could have submitted the proper forms to correctional officials for placement at trade school. Nevertheless, assuming *arguendo* that Jones and the male inmates placed in trade school are similarly situated, Jones utterly and completely fails to present any evidence, significantly probative or otherwise, that gender discrimination constituted a motivating factor in the decision to deny her placement in trade school. The purely circumstantial evidence presented by Jones does not warrant an inference of discriminatory intent. Additionally, the showing of a disparate impact upon inmates of different genders

is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Association*, 43 F.3d 265, 276 (6th Cir. 1994). The arbitrary application of administrative rules likewise does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.

Jones simply makes the conclusory legal assertion that the defendants' decision to deny her request for trade school resulted from gender discrimination because male inmates at other facilities with the same sentence are in some instances granted access to such favorable program. Beyond this self-serving and specious allegation, Jones produces nothing which suggests that gender animus motivated the defendants' actions. Moreover, the evidentiary materials submitted by the parties demonstrate that the defendants based their adverse decision regarding trade school on a lack of proof demonstrating satisfaction of necessary security needs and plaintiff's admitted failure to submit the requisite forms for placement in trade school. Summary judgment is therefore due to be granted in favor of the defendants.

### B. The Retaliation Claims

Jones contends the defendants denied her placement in trade school, removed her from her job as a tutor and subjected her to harassment because she exercised her right of access to the courts. *Plaintiff's Complaint - Court Doc. No. 1* at 5. The defendants assert they changed Jones' job assignment and denied her request for trade school due to security concerns and the failure of Jones to submit appropriate documents in support of her request

13

to attend trade school. They further adamantly deny harassing or threatening Jones for seeking relief from this court.

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) she engaged in a constitutionally protected activity, (ii) she suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for her exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually

14

any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court

that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

The defendants have demonstrated through relevant admissible evidence that any adverse action taken against Jones resulted solely from the defendants attempt to maintain security and follow applicable regulations governing the placement of inmates in trade school. Jones offers only her conclusory allegations that the defendants acted in a retaliatory manner. With respect to "disputed matters of professional judgment[,]" this court "must accord deference to the views of prison authorities." *Beard*, --- U.S. at ---, 126 S.Ct. at 2578. In light of the foregoing and as this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, the court concludes that the plaintiff's conclusory allegations of retaliation do not set forth "sufficient evidence" disputing the instant matters of professional judgment so as to "allow [her] to prevail on the merits." *Beard*, --- U.S. at ---, 126 S.Ct. at 2578. Thus, Jones "cannot prevail at the summary judgment stage." *Id*.

### C.  Job Placement in Violation of Administrative Regulations

Jones complains the defendants deprived her of due process when they changed her job assignments absent action by the institutional job board. Jones maintains these

16

unilateral actions by the defendants violated administrative regulations governing job assignments. Under the circumstances of this case, this due process challenge entitles Jones to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of her liberty in the ordinary sense, can be further deprived of her liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

17

The Constitution itself does not give rise to a liberty interest in a particular job assignment for an inmate. *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (district court correctly determined prison inmates do not have a constitutionally protected right to keep a certain job as "[t]he due process clause does not 'in and of itself protect a duly convicted prisoner against' a change of status."); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (transfer of inmate "to another job would be permissible as a matter of prison administration."); *Altizer v. Padernick*, 569 F.2d 812, 813 (4th Cir. 1978) (inmate's expectation of maintaining certain prison job is not a property or liberty interest protected by due process); *Bryan v. Werner*, 516 F.2d 233, 240 (3rd 1975) (same). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in any privilege, including a particular job assignment, bestowed by correctional officials because such action does not adversely impact the sentence imposed upon her. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, changes in the jobs assigned Jones did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the job assignment decisions about which Jones complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

18

As the Supreme Court recently noted,

>   *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

>   "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

>   After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that various changes in Jones' job assignment "though concededly punitive, do[] not represent a dramatic departure from the

basic conditions" of the sentence imposed upon her. *Sandin*, 515 U.S. at 485. Since the aforementioned actions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" 515 U.S. at 484, the plaintiff's challenges to those job assignments made without approval of the job board fail to implicate any protected liberty interest as such assignments do not present "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." 515 U.S. at 486. Summary judgment is therefore due to be granted in favor of the defendants on this claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be granted.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 27, 2008 the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 14th day of March, 2008.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

21